**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BILLY GLENN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CV-0350-CVE-FHM** |
| | ) | |
| **TRACY MCCOLLUM, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**OPINION AND ORDER**</u>

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Billy Glenn, a state prisoner appearing pro se. Respondent filed a response (Dkt. # 12) and provided the state court records (Dkt. ## 12, 13, 14, 15) necessary for adjudication of Petitioner's claims. Petitioner filed a reply to the response (Dkt. # 22) and a motion to stay (Dkt. # 38). Respondent filed a response to the motion to stay (Dkt. # 41). For the reasons discussed below, Petitioner's motion to stay and petition for a writ of habeas corpus shall be denied.

*BACKGROUND*

In the early morning hours of September 26, 2009, Petitioner walked down the hall from his room at the Regency Inn Motel, in Tulsa, Oklahoma, where he lived with his wife, Kimberly Smith, to the motel room of his co-worker Burton Harjo and announced that his wife "might be dead." Dkt. # 13-5, Tr. Vol. II at 210-12, 216. Petitioner asked Harjo to come down to his room and look. <u>Id.</u> at 216. When Harjo entered Petitioner's motel room, he saw Smith lying on the floor at the foot of the bed. <u>Id.</u> at 217. Smith was not breathing. <u>Id.</u> at 219.

Harjo instructed Petitioner to call 9-1-1, and police and emergency medical personnel responded to the scene. <u>Id.</u> at 220, 251-53. Medical personnel determined that Smith was dead, <u>see</u> <u>id.</u> at 252, and, upon examining the body in the motel room, the medical examiner's investigator

found a stab wound in the left side of Smith's chest.[1]  Id. at 285-86.  In the motel room, detectives discovered a wet fillet knife in the sink, Dkt. # 13-5, Tr. Vol. II at 288, a wet towel stained with blood, id. at 301; Dkt. # 13-6, Tr. Vol. III at 415, two holes in the wall, apparently made with a knife, Dkt. # 13-5, Tr. Vol. II at 309, and cast-off blood on the west wall.  Id. at 316.

When interviewed by Tulsa Police Department Detectives Huff and Felton, Petitioner consistently claimed that he and Smith had gone out drinking that night, and when they got back to the motel room he passed out and could not remember what happened.  Dkt. # 15.  Petitioner claimed to have been so drunk that he blacked out.  Id.  During the interview, Petitioner acknowledged that he and Smith had "scuffled" in the motel room and that they were the only two people in the room, but Petitioner claimed that he did not remember picking up a knife and stabbing Smith.  Id.

Petitioner was charged with First Degree Murder in Tulsa County District Court, Case No. CF-2009-4842.  See Dkt. # 12-4 at 1.  The record reflects that, at the conclusion of trial, a jury convicted Petitioner of Second Degree Murder.  Id. at 1.  The jury recommended a sentence of eighteen (18) years imprisonment and a $5,000 fine, id., and the trial judge sentenced Petitioner in accordance with the jury's recommendation.  Id.  Attorney Adam Haselgren represented Petitioner at trial.  Id. at 5.

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA) (Dkt. # 12-1).  Represented by attorney Richard Couch, Petitioner raised two (2) propositions of error, as follows:

---

[1] The medical examiner conducted an autopsy, determined that the stab wound was the cause of death, and ruled Smith's death a homicide.  Dkt. # 13-6, Tr. Vol. III at 387-89.

2

Proposition 1: The trial court erred in not giving Oklahoma Jury Instructions – Criminal (Second) No. 9-12 (Evidence – Voluntary Statement by Defendant) and No. 9-13 (Evidence – Necessity for Corroboration of Confessions).

Proposition 2: The Appellant was deprived of effective assistance of counsel.

Id.  In an unpublished summary opinion, entered February 24, 2012, in Case No. F-2010-1217, the OCCA affirmed the trial court's judgment and sentence.  Dkt. # 12-4 at 1, 5.

On September 28, 2012, Petitioner filed an application for post-conviction relief in the trial court (Dkt. # 12-5).  Petitioner raised ten (10) proposition of error, as follows:

Proposition 1: The trial court erred in not giving jury instruction OUJI-CR 9-46 to instruct the jury on reenactment evidence.

Proposition 2: Introduction of the DVD recording (custodial interrogation) violated Petitioners [sic] substantial rights to be confronted by his accuser in open court.

Proposition 3: The trial court erred in failing to conduct a Daubert hearing regarding crime scene reconstructionist [sic] testimony.  (State exhibit 55).

Proposition 4: Prosecutorial misconduct denied Petitioner his right to due process of law and a fair trial.

Proposition 5: Petitioner was denied Due Process when prosecution suppressed evidence that was material to guilt or punishment.

Proposition 6: The evidence is insufficient to support the conviction for the crime of murder in the second degree.

Proposition 7: The gruesome nature of the photograph evidence was unnecessary and was given to inflame the passion of the jury.

Proposition 8: The cumulative effect of all the errors addressed above deprived the Petitioner [of] a fair trial.

Proposition 9: The Petitioner received ineffective assistance of trial counsel.

Proposition 10: The Petitioner was denied effective assistance of appellate counsel.

3

Id.  On November 2, 2012, the trial court denied Petitioner's application for post-conviction relief (Dkt. #12-6).  Petitioner perfected a post-conviction appeal (Dkt. # 12-11).  On April 9, 2013, in Case No. PC-2012-1059, the OCCA affirmed the trial court's denial of Petitioner's application for post-conviction relief, holding that Propositions 1-9 were procedurally barred and that the trial court properly denied Proposition 10 – Petitioner's ineffective assistance of appellate counsel claim.  Id. at 1-2.

On June 13, 2013, Petitioner filed his federal petition for a writ of habeas corpus (Dkt. # 1). In his petition, Petitioner identifies twelve (12) grounds of error, as follows:

Ground 1:      The trial court erred in not giving Oklahoma Jury Instructions – Criminal (Second) No. 9-12 (evidence – voluntary statement by defendant), No. 9-13 (evidence – necessity for corroboration of confession); violative [of] due process right to a fair and impartial trial and jury as guaranteed by the 5th and 14th Amends. of U.S. Const.

Ground 2:      The Appellant was deprived of effective assistance of counsel, violative [of] Sixth (6th) Amend. of U.S. Const.

Ground 3:      Trial court erred in not giving jury instruction OUJI-CR-9-46 to instruct jury on reenactment evidence, violative [of] Due Process right to a fair and impartial trial and jury as guaranteed by the Fifth (5th) and Fourteenth (14th) Amends. of U.S. Const.

Ground 4:      Introduction of DVD recording (custodial interrogation) violated Petitioners [sic] substantial rights to be confronted by his accuser's [sic] in open court, violative [of] rights under the Confrontation Clause and Due Process right to a fair, impartial trial and jury guaranteed by Fifth, Sixth, and Fourteenth Amends. of the U.S. Const.

Ground 5:      Trial court erred in failing to conduct a Daubert hearing regarding crimescene [sic] reconstructionist [sic] testimony. (See State Ex. 55), (Exhibit 1).   Violative [of] Due Process and right to avoid unnecessary prejudice resulting in an unfair trial in violation of Fifth (5th) and Fourteenth (14th) Amends. of the U.S. Const.

4

| | |
|---|---|
| Ground 6: | Prosecutor misconduct denied Petitioner his right to Due Process of Law and a fair trial, violative [of] Fifth (5th) and Fourteenth (14th) Amends. of the U.S. Const. |
| Ground 7: | Petitioner was denied Due Process when the prosecution suppressed evidence that was material to guilt or punishment, violative [of] Due Process right to a fair and impartial trial and jury guaranteed by the Fifth and Fourteenth Amends. of the U.S. Const. |
| Ground 8: | The evidence is insufficient to support the conviction for crime of murder in the second degree, violative [of] Due Process right to a fair and impartial trial and jury guaranteed by the Fifth and Fourteenth Amends. of the U.S. Const. |
| Ground 9: | The grusome [sic] nature of the photograph evidence was unnecessary and was given to inflame the passion of the jury, violative [of] right to avoid unnecessary prejudice resulting in an unfair trial in violation of Fifth and Fourteenth Amends. of the U.S. Const. |
| Ground 10: | The cumulative effect of all the errors addressed deprived the Petitioner of a fair trial, violative [of] right to be properly complained as guaranteed by Fifth, Sixth, and Fourteenth Amends. of the U.S. Const. |
| Ground 11: | Petitioner received ineffective assistance of trial counsel, violative [of] right to effective assistance of counsel as guaranteed by the Sixth Amend. of the U.S. Const. |
| Ground 12: | Petitioner was denied effective assistance of appellate counsel, violative [of] right to effective assistance of counsel as guaranteed by Sixth Amend. of the U.S. Const. |

Id.  In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief (Dkt. # 12).  On February 10, 2016, Petitioner filed a motion to stay so he can return to state court and file a second application for post-conviction relief to exhaust state remedies on an additional claim (Dkt. # 38).

5

*ANALYSIS*

**A.     Motion to Stay**

In his motion to stay, filed more than two and a half years after the petition for writ of habeas corpus, Petitioner requests this action be stayed so that he can return to state court to exhaust available state remedies for a new claim of prosecutorial misconduct not presented in his direct appeal or his first application for post-conviction relief (Dkt. # 38).  While Petitioner's motion is not a model of clarity, it appears Petitioner alleges that the prosecutor engaged in misconduct when, during her closing argument, she "improperly commented" on a bus schedule found in Petitioner's motel room.  Id. at 5.  Petitioner states that he was unable to include this claim in his original application for post-conviction relief because he did not receive a copy of the trial transcripts until one day before the OCCA affirmed the denial of his application for post-conviction relief.  Id. at 2.  According to Petitioner, the State did not file an answer and did not file "the record or portions thereof that are material to questions raised in the application," in defiance of Oklahoma law.  Id. (citing Okla. Stat. tit. 22, § 1083(A)).  Petitioner alleges that, had the State filed these documents, Petitioner would have been able to discover the new instance of prosecutorial misconduct before the OCCA affirmed the denial of his initial application.  Id. at 2-3.  Petitioner argues that this conduct by the State provides good cause for his failure to exhaust this claim.  Id. at 1-3.

The United States Supreme Court "has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."  Coleman v. Thompson, 501 U.S. 722, 731 (1991) (citations omitted).  The exhaustion requirement is based on the doctrine of comity.  Rose v. Lundy, 455 U.S. 509, 518-19 (1982).  Requiring exhaustion "serves to minimize friction between our federal and state systems

of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (citations omitted) (per curiam).

To exhaust a claim, Petitioner must have "fairly presented" that specific claim to the state's highest court. See Picard v. Conner, 404 U.S. 270, 275-76 (1971). A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). To satisfy the exhaustion requirement, a prisoner must afford the state court the "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim," Picard, 404 U.S. at 277 (internal quotation marks and citation omitted), "which entails presentation both of the facts on which he bases his claim and the constitutional claim itself." Wilson v. Workman, 577 F.3d 1284, 1292 (10th Cir. 2009) (citations omitted) (overruled on other grounds).

The enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996 "dramatically altered the landscape for federal habeas corpus petitions" by preserving the "total exhaustion" requirement of Lundy, but at the same time imposing a one-year statute of limitations on the filing of federal petitions. Rhines v. Weber, 544 U.S. 269, 274 (2005). "As a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." Id. at 275.

In Rhines, the Supreme Court held that when faced with a "mixed petition" containing both exhausted and unexhausted claims, a district court could issue a stay to afford the petitioner a chance to return to state court to raise the unexhausted claims. Id. at 278. A motion to stay should be

granted where (1) Petitioner shows "good cause for his failure to exhaust," (2) the "unexhausted claims are potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. at 277.

Petitioner claims that he was unable to present his new claim of prosecutorial misconduct to the OCCA in his initial application for post-conviction relief because the State did not file an answer and did not file "the record or portions thereof that are material to questions raised in the application." Dkt. # 38 at 1-2. Petitioner claims that without the record he could not have discovered the additional error. Id. at 3. However, Petitioner fails to acknowledge that he was present during his trial and heard the allegedly improper argument at that time. Also, Petitioner does not explain why he could not have discovered that particular claim of prosecutorial misconduct when his application for post-conviction relief already contained other claims of prosecutorial misconduct. See Dkt. # 1 at 33-36. Furthermore, Petitioner states that he received a copy of the trial transcript on April 8, 2013 – one day before the OCCA denied his application for post-conviction relief. Dkt. # 38 at 2. At that time, the one year limitations period had not yet expired,[2] and if Petitioner had promptly filed a second application for post-conviction relief, the limitations period would have been tolled. 28 U.S.C. § 2244(d)(2). Petitioner does not explain why he did not file a

_____

[2] Although Petitioner filed his petition for writ of habeas corpus before the one-year limitation deadline, Petitioner waited more than two and a half years to file the motion to stay. Because the pendency of this federal habeas case does not toll the one year limitations period, Duncan v. Walker, 544 U.S. 167 (2001), the claim raised in the motion to stay is time-barred.

second application for post-conviction relief before filing his federal petition. Therefore, because Petitioner has not shown good cause for his failure to exhaust state remedies, and because the unexhausted claim is time-barred, the motion to stay is denied.

**B.    Petition for a Writ of Habeas Corpus**

**1.    Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c). See Rose, 455 U.S. at 510. Petitioner presented the claims raised in Ground 2 to the OCCA on direct appeal and presented the claims raised in Grounds 3-5, 7-10, and 12 to the OCCA on post-conviction appeal. Petitioner also presented many, although not all, of the claims raised in Grounds 1, 6, and 11 to the OCCA as part of either his direct or post-conviction appeal. Even though this petition contains several unexhausted claims, the unexhausted claims are meritless and are denied. 28 U.S.C. § 2254(b)(2).

In addition, the Court finds Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**2.    Claims Adjudicated by the OCCA**

The AEDPA provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 102-03 (2011); Williams v. Taylor, 529 U.S.

362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established

Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the

Supreme Court's] decisions."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may

consider only whether the state court applied the federal law in an objectively reasonable manner.

See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir.

2002).  An unreasonable application by the state courts is "not merely wrong; even 'clear error' will

not suffice."  White, 134 S. Ct. at 1702 (citation omitted).  The petitioner "must show that the state

court's ruling . . . was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."  Id. (citation

and internal quotation marks omitted); see Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

Generally, a federal habeas court has no authority to review a state court's interpretation or

application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (emphasizing that

it is not the province of a federal habeas court to reexamine state court determinations on state law

questions).  When conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States.  Id. at 68 (citations

omitted).

### a.      Ground 1: Jury Instructions

As his first ground of error, Petitioner alleges that the trial court's failure to give Oklahoma

Uniform Jury Instruction – Criminal (2d) (OUJI-CR) No. 9-12 (Evidence – Voluntary Statement by

Defendant) and No. 9-13 (Evidence – Necessity for Corroboration of Confession) violated his "due

process right to a fair and impartial trial and jury as guaranteed by the 5th and 14th Amends. of U.S.

10

Const." Dkt. # 1 at 6.  During Petitioner's trial, the jury viewed a recording of Petitioner's custodial interrogation by two detectives.  See Dkt. # 13-6, Tr. Vol. III at 369; Dkt. # 15.  The jury was not instructed that they should disregard Petitioner's statement unless they were "convinced beyond a reasonable doubt that the statement was voluntary," OUJI-CR 9-12, and that "[a] confession alone does not justify a conviction unless it is corroborated." OUJI-CR 9-13.

Because Petitioner's trial counsel did not "request or object to the absence of . . . (OUJI-CR) 9-12 and 9-13," the OCCA reviewed the claim under a plain error standard. Dkt. # 12-4 at 2.  The OCCA held that "[t]he trial court erred in failing to give the uniform instructions.  However, this error did not affect Appellant's substantial rights or the outcome of the trial as there was sufficient evidence in the record that Appellant's statements were voluntary, and the record contained sufficient corroborating evidence of those statements." Id. at 2-3 (citations omitted).  Respondent argues that  "[t]he OCCA's holding . . . was a matter of state law not subject to habeas corpus review." Dkt. # 12 at 9.

On direct appeal, the OCCA held that although there was plain error, the error was harmless "as there was sufficient evidence in the record that Appellant's statements were voluntary, and the record contained sufficient corroborating evidence of those statements." Dkt. # 12-4 at 2-3 (citations omitted).  To be entitled to habeas corpus relief on this claim, Petitioner must show that the instructional error had a substantial and injurious effect or influence on the jury's verdict.  Brecht v. Abrahamson, 507 U.S. 619, 631 (1993).  After reviewing the record, the Court finds that sufficient evidence demonstrated Petitioner's statements were voluntary.  At the beginning of Petitioner's interview with Detectives Huff and Felton, Petitioner read his Miranda[3] rights from a Notification

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

11

of Rights Waiver Form while Detective Felton read them aloud.  Dkt. # 15; see Dkt. # 13-9 at 13.

Petitioner placed his initials beside each right to signify that he understood it, and Petitioner signed

the form demonstrating that he waived those rights in writing.  Dkt. # 15; see Dkt. # 13-9 at 13.

Later in the interview, Detective Huff reminded Petitioner that he had been informed of his Miranda

rights.  Dkt. # 15.  The record does not reflect that the detectives used force, threats, or promises in

exchange for Petitioner's statement.

The record also contains sufficient evidence to corroborate Petitioner's statement.  Smith was

stabbed to death and her body was found on the floor of the motel room where the couple lived.

Dkt. # 13-5, Tr. Vol. II at 286.  Police officers found a knife that appeared to have been recently

cleaned in a sink, id. at 288, and found Smith's blood in various places around the room.  See id. at

301, 316.  A woman who worked at the motel where Petitioner lived and worked testified that she

saw Petitioner and Smith the night before the murder, and they appeared to be intoxicated.  Id. at

231.  A neighbor testified that she heard the couple arguing in the early morning hours of September

26, 2009.  Dkt. # 13-6, Tr. Vol. III at 337-40.

After reviewing the record, the Court cannot find that the failure to give the instructions had

a substantial and injurious effect or influence on the jury's verdict.  Brecht, 507 U.S. at 631.

Therefore, Petition has not shown that the OCCA's adjudication was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court.[4]

---

[4] Petitioner also claims in Ground 1 that his Fourteenth Amendment rights were violated because the trial judge failed to determine the voluntariness of his statements prior to the jury viewing the videotaped interview.  Dkt. # 1 at 11-12.  This claim is unexhausted.  However, in light of the procedural posture of this case it would be futile to require Petitioner to return to the state court to exhaust and the claim is subject to an anticipatory procedural bar.  Anderson v. Sirmons, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007).  In addition, under 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits.  The Court finds this unexhausted lacks merit and, therefore, denies habeas relief.  28 U.S.C. § 2254(b)(2).

### b.   Ground 2: Ineffective Assistance of Trial Counsel

As his second ground of error, Petitioner claims that he received ineffective assistance of trial counsel.  Dkt. # 1 at 14.  According to Petitioner, trial counsel provided ineffective assistance when he "waived a Jackson v. Denno hearing, not contesting Petitioner's statement to detectives on September 26, 2009 was coerced," id., and failed to request or object to the absence of OUJI-CR 9-12 and 9-13.  Id. at 15.  Petitioner also claims that his trial counsel was ineffective "due to inadequate cross-examination by trial counsel of State's witness Shanna Ramsey."  Id. at 16.

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of his claim was contrary to, or involved an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).  See 28 U.S.C. § 2254(d).  Strickland sets out a two-pronged standard for review of ineffective assistance of counsel claims.  A defendant must show that (1) his counsel's performance was deficient and that (2) the deficient performance was prejudicial.  Strickland, 466 U.S. at 687.

The first prong may be established by showing that counsel performed below the level expected from a reasonably competent attorney in a criminal case.  Id. at 687-88.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689 (citation omitted).  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id. at 689 (citation omitted).

13

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999); Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) (stating that a petitioner must show that counsel's errors rendered the results of the trial unreliable).  "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.  Review of a state court's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (noting that a habeas court must "take a highly deferential look at counsel's performance" under Strickland and "through the deferential lens of § 2254(d)" (internal quotation marks omitted)).

After reviewing the record, and for the reasons discussed below, the Court cannot find that the OCCA's determination that Petitioner did not receive ineffective assistance of trial counsel was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### i.    Waiver of Jackson v. Denno Hearing

Petitioner argues that his trial attorney was ineffective because his attorney waived a Jackson v. Denno hearing to determine whether Petitioner's statement was voluntary. Dkt. # 1 at 14-15; see Jackson v. Denno, 378 U.S. 368 (1964).  The OCCA found that Petitioner was not prejudiced by the waiver of the Jackson v. Denno hearing "because any such challenge would have been denied as the record contained sufficient evidence of the voluntariness of the statements."  Dkt. # 12-4 at 3

14

(citations omitted).  As discussed above, at the beginning of Petitioner's interview, the detectives informed Petitioner of his <u>Miranda</u> rights and allowed Petitioner to read a list of his <u>Miranda</u> rights for himself (Dkt. # 15).  Petitioner also placed his initials beside each item on the list to signal that he understood each item, and Petitioner waived his <u>Miranda</u> rights in writing.  <u>Id.</u>  Later in the interview, Petitioner was reminded that he had been informed of his <u>Miranda</u> rights.  <u>Id.</u>  The record does not reflect that the police used force, threats, or promises in exchange for Petitioner's statement.  Therefore, the Court cannot find that the OCCA's determination that Petitioner's trial counsel was not ineffective for waiving a <u>Jackson v. Denno</u> hearing was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### ii.      Failure to Request OUJI-CR 9-12 and 9-13

Petitioner contends that his trial counsel provided ineffective assistance when he failed to request OUJI-CR 9-12 and 9-13.  Dkt. # 1 at 15.  On direct appeal, the OCCA held that "counsel's failure to raise timely objections to the absence of the instructions or request such does not satisfy the requirements of <u>Strickland</u> as Appellant was not prejudiced by counsel's conduct."  Dkt. # 12-4 at 4 (citation omitted).  This Court determined above that the OCCA's holding that Petitioner was not prejudiced by the failure of the trial court to give OUJI-CR 9-12 and 9-13 was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.  <u>See</u> <u>supra</u> Section B.2.a.  Because Petitioner was not prejudiced by the absence of OUJI-CR 9-12 and 9-13, the Court cannot find that the OCCA's adjudication of this claim of ineffective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### iii.      Inadequate Cross-examination of Shanna Ramsey

Petitioner argues that his trial attorney was ineffective because his attorney conducted an "inadequate cross-examination" of State's witness Shanna Ramsey. Dkt. # 1 at 16. Petitioner asserts that his attorney should have impeached Ramsey using allegedly inconsistent statements given on prior occasions. Id. On direct appeal, the OCCA held that "Appellant's speculation as to what a hypothetical cross-examination of Shanna Ramsey might have revealed and what impact the failure to so cross-examine might have had on the jury is not enough to satisfy the appellant's burden of proving counsel's representation was objectively unreasonable." Dkt. # 12-4 at 4 (citation omitted).

The record reflects that Ramsey lived down the hall from Petitioner and Smith and heard them fighting in the hallway outside her room during the early morning hours of September 26, 2009. See Dkt. # 13-6, Tr. Vol. III at 337-42. Ramsey testified that she could see Smith and Petitioner through the peephole in her door. Id. at 339-40. Petitioner's attorney cross-examined Ramsey and asked about inconsistencies between Ramsey's testimony at trial and her previous statements. See id. at 344-45.

In his petition, Petitioner claims that his attorney should have impeached Ramsey using additional statements Ramsey made to the police on the morning of September 26, 2009. Dkt. # 1 at 16. According to Petitioner, Ramsey told police that she heard "motherfucker this and motherfucker that," and that "I'm nosey, I'll find out" what happened to Smith. Id. Petitioner also claims that, on October 1, 2009, Ramsey told Detective Felton "that she heard the sound of thumping on the walls [as if] Kimberly Smith and Billy Glenn were shoving each other." The Court finds that any "inconsistencies" between these statements and Ramsey's trial testimony are not

16

substantial enough to render Petitioner's attorney's decision not to use them during cross-examination objectively unreasonable. Id. Ramsey's statements are consistent with other evidence presented at trial that Petitioner and Smith had a violent argument before Smith was stabbed to death. See Dkt. # 13-6, Tr. Vol. III at 338-41. Ramsey's statement that she was "nosey" and would find out what happened to Smith, presumably out of concern for Smith, was consistent with Ramsey's testimony at trial that she was a friend of Smith. Id. at 336.

Therefore, the Court cannot find that the OCCA's adjudication of this claim of ineffective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### c.    Ground 12: Ineffective Assistance of Appellate Counsel

In Ground 12, Petitioner claims that appellate counsel provided ineffective assistance. Dkt. # 1-1 at 14. Petitioner asserts that "all or any one of the propositions of error" raised in his federal petition as Grounds 3-11 "warrant reversal, modification or resentencing" and that appellate counsel was ineffective for failing to raise them. Id. In response, Respondent argues that "Petitioner cannot show, either substantively or as cause, that appellate counsel was ineffective for failing to raise the issues." Dkt. # 12 at 25.

Addressing this claim in Petitioner's application for post-conviction relief, the state trial court stated that "Petitioner's appellate counsel carefully selected legal issues to be raised on appeal. . . . The Court finds Petitioner's appellate counsel was reasonably competent." Dkt. # 12-6 at 10. The OCCA affirmed and held that "Petitioner has not shown that his appellate counsel's performance was objectively unreasonable in failing to get the jury verdict overturned or in failing

17

to obtain other relief.  He has not demonstrated a reasonable probability that the result of his appeal

would have been different."  Dkt. # 12-11 at 2.

Petitioner is not entitled to habeas relief on this claim unless he demonstrates that the

OCCA's adjudication was contrary to, or involved an unreasonable application of, Strickland.  As

detailed above, under Strickland, a defendant must show that his counsel's performance was

deficient and that the deficient performance was prejudicial.  Strickland, 466 U.S. at 687.

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance

by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue.

Hawkins, 185 F.3d at 1152.  As stated above, the Tenth Circuit directed that:

> [i]f the omitted issue is so plainly meritorious that it would have been unreasonable
> to winnow it out even from an otherwise strong appeal, its omission may directly
> establish deficient performance; if the omitted issue has merit but is not so
> compelling, the case for deficient performance is more complicated, requiring an
> assessment of the issue relative to the rest of the appeal, and deferential consideration
> must be given to any professional judgment involved in its omission; of course, if the
> issue is meritless, its omission will not constitute deficient performance.

Cargle, 317 F.3d at 1202 (citations and footnote omitted); see Parker, 148 F.3d at 1221. In addition,

> to satisfy Strickland's deficient performance element, a habeas petitioner 'must . . .
> show that his [appellate] counsel was objectively unreasonable in failing to find
> arguable issues to appeal – that is, that counsel unreasonably failed to discover
> nonfrivolous issues and to file a merits brief raising them.'  To satisfy Strickland's
> prejudice element, a petitioner must establish 'a reasonable probability that, but for
> his counsel's unreasonable failure to [raise an issue], he would have prevailed on his
> appeal.'

Kidwell v. Martin, 480 F. App'x 929, 933 (10th Cir. 2012) (unpublished)[5] (citation omitted).  The

Tenth Circuit has consistently held that "[w]hile counsel should not omit 'plainly meritorious'

---

[5] This and other unpublished court decisions herein are not precedential but are cited as
persuasive authority, pursuant to Tenth Circuit Rule 32.1.

claims, counsel need not raise meritless issues." Smith, 550 F.3d at 1268 (citation omitted).  To

prevail, a petitioner must "show an 'objectively unreasonable' decision by the appellate counsel as

well as a 'reasonable probability that the omitted claim would have resulted in relief.'" Id. (citation

omitted).

**i.        Failure to Challenge Omission of Jury Instruction OUJI-CR 9-46**

Petitioner argues that the trial court should have given a jury instruction on reenactment

evidence, OUJI-CR 9-46, contemporaneously with the presentation of a crime-scene diagram

prepared by Detective Aschoff, Dkt. # 1 at 19; see Dkt. # 13-9 at 10, and that his appellate counsel

was ineffective for failing to raise the issue. Dkt. # 1-1 at 14.  The crime-scene diagram consisted

of a basic drawing showing the approximate layout of the room and position of the victim, as well

as the location of various items of evidence. Dkt. # 13-9 at 10.  OUJI-CR 9-46 states that:

> The State/defendant is about to present evidence in the form of a
> **video/computer animation/[other]**, which is intended to help illustrate certain
> testimony or evidence being presented to you.  The exhibit being presented is not an
> actual recording or video of the event that is shown.  Rather, the exhibit is offered
> simply as a "reenactment."  The exhibit is intended to help you better understand the
> **State's/defendant's** position about how an event occurred (or did not occur) and that
> party's understanding of the evidence supporting this interpretation.  The exhibit is
> intended to assist you in your role as jurors, and like all evidence, it may be accepted
> or rejected by you, in whole or in part.

OUJI-CR 9-46.  The Notes on Use for OUJI-CR 9-46 instruct that "[t]his Instruction should be given

contemporaneously with the presentation of video, computer-based, or other comparable

'reenactment' evidence." Id. (citation omitted).  This claim is meritless because OUJI-CR 9-46 is

not applicable to the diagram presented to Petitioner's jury, as there is no danger that the jury would

believe the diagram was "an actual recording or video of the event that is shown." Id.  The Court

finds that the OCCA's determination that appellate counsel was not ineffective for failing to raise

19

this issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### ii.    Failure to Challenge Introduction of Videotaped Interview

Petitioner contends that the introduction of the DVD recording of his interview with Detectives Felton and Huff violated the Confrontation Clause, Dkt. # 1 at 24, and that his appellate counsel was ineffective for failing to raise the issue. Dkt. # 1-1 at 14. Petitioner alleges that the two detectives who interviewed him "made statements [in the recording] not being subject to cross-examination." Dkt. # 1 at 25. Petitioner alleges, in pertinent part, that:

> [t]he Confrontation Clause was violated by admission of non-testifying police officer's (Detective Huff) statements that incriminated Petitioner. Detective Huff states there's irrefutable evidence from the crime scene in that room that she was stabbed in that room and died in that room, never left that room, and she died in that room, and nobody else was there other than you. . . . Detective Huff stated yeah, did you get some blood on your pants when you were trying to . . . we noticed you trying to wipe your pants over there on your left leg. Detective Huff stated, there's a knife in your sink that's been cleaned up. She didn't clean it up. So, you know, those kind of things deserve an explanation. Kim got stabbed and didn't move from that point on. You, the only other person in that room, had to step over 12 . . . 15 feet away to the sink because the knife was washed up. . . . You've lied to us about this over and over and over again.

Id. at 26-27. While the record reflects that Detective Felton testified at trial and was cross-examined by Petitioner's attorney, see Dkt. # 13-6, Tr. Vol. III at 351, 369, Detective Huff neither testified at trial nor was previously available for cross-examination.

The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) (citation omitted); see U.S. v. Faulkner, 439 F.3d 1221, 1226 (10th 2006); Andrew v. State, 164 P.3d 176, 189 (Okla. Crim. App. 2007). While other circuits have held that the statements of a third party on a recording are not hearsay because they are offered to provide context for the

20

defendant's statements and not for the truth of the matter asserted, see U.S. v. Gajo, 290 F.3d 922, 930 (7th Cir. 2002) (collection of cases in support), the Tenth Circuit has stated that it is "skeptical" of the idea that all statements made by officers during an interrogation "provide meaningful context" and are not being offered for the truth of the matter asserted.  U.S. v. Collins, 575 F.3d 1069, 1073 (10th Cir. 2009).  The Tenth Circuit explained that:

> [a]d hominem attacks, accusations of lying, and general posturing may be standard in police interrogations, but they have little evidentiary value unless the government intended for the jury to believe the truth of those statements.  Perhaps more problematically, [the officers'] statements in the recording unequivocally corroborated evidence that had just been presented to the jury and vouched for the credibility of individuals who had just testified.

Id. at 1074; see U.S. v. Cesareo-Ayala, 576 F.3d 1120, 1129 & 1129 n.4 (10th Cir. 2009) (contrasting "(1) brief nonassertive statements made in response to a phone call initiated by the defendant" which merely provide context with "(2) lengthy assertions (indeed, accusations of lying and even guilt) made by police officers during custodial interrogation of the defendant").

While there is a lack of consensus among the circuits, the United States Supreme Court has not determined whether the admission of a non-testifying police officer's statements, made during a videotaped interview and presented to the jury, violates the Confrontation Clause.[6]  For that reason, Petitioner cannot meet his burden of showing that the OCCA's adjudication of this claim of ineffective assistance of appellate counsel was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  This Court's review of

---

[6]The Court notes that, on October 5, 2015, the Supreme Court denied a petition for writ of certiorari presenting the question of whether the Confrontation Clause is violated when non-testifying co-defendants' statements are admitted into evidence by being quoted in the custodial interrogation of the defendant and presented before the jury in that format.  See Swain v. Arkansas, 136 S. Ct. 266 (2015).

ineffective assistance counsel claims is "doubly deferential," in that the standard found in § 2254(d) is deferential to the state court's holding that invokes the already deferential standard found in Strickland. Pinholster, 563 U.S. at 190. The Court also notes that the OCCA has not determined whether an officer's recorded statements during a custodial interview are hearsay. Therefore, Petitioner cannot establish a reasonable probability that, but for appellate counsel's unreasonable failure to raise this claim, he would have prevailed on his appeal. Petitioner is not entitled to habeas corpus relief on this claim of ineffective assistance of appellate counsel. 28 U.S.C. § 2254(d).

### iii.  Failure to Challenge Lack of a Daubert Hearing

Petitioner alleges that the "[t]rial court erred in failing to conduct a Daubert hearing regarding crimescene [sic] reconstructionist [sic] testimony" presented by witness Richard Aschoff, Dkt. # 1 at 28, and that his appellate counsel was ineffective for failing to raise the issue. Dkt. # 1-1 at 14. Petitioner argues that "the discipline of crime scene reconstruction has not been approved or defined, no [sic] had blood spatter analysis expert's expertise been determined in this area or determined Aschoff as a tool mark expert." Dkt. # 1 at 29. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court set forth principles for determining whether the opinions offered by an expert witness are reliable and for assessing the admissibility of expert testimony. In addition, in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court listed four factors for courts to use in addressing reliability: "[w]hether a 'theory or technique . . . can be (and has been) tested'; [w]hether it 'has been subjected to peer review and publication'; [w]hether . . . there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and [w]hether the theory or technique enjoys

'general acceptance' within a 'relevant scientific community.'"  Id. at 149-50 (internal quotation marks and citation omitted).

Petitioner asserts that Aschoff acted as a crime scene reconstruction expert when, before trial, he prepared a diagram of the motel room where Smith was found dead.  Dkt. # 1 at 28, 29; see Dkt. # 13-9 at 10.  As discussed above, the diagram showed the approximate location of Smith's body and various objects in the room, and it also showed where various items of evidence were located. Dkt. # 13-9 at 10.  Petitioner does not explain why the diagram constitutes a theory or technique that would necessitate a Daubert hearing.  Petitioner appears to argue that Aschoff was not qualified to conduct analysis of the blood spatter found in the motel room near Smith's body.  Dkt. # 1 at 29. However, Detective Aschoff testified that he had attended "a basic bloodstain pattern analysis course by Bevel and Associates."  Dkt. # 13-5, Tr. Vol. II at 277.  Petitioner does not present any arguments as to why this training was insufficient or why Aschoff was not qualified to state that the blood spatter found on the wall of the motel room was cast-off blood.

Petitioner also argues that Aschoff was not qualified to interpret the holes in the motel wall as knife marks because he was not a tool mark expert.  Dkt. # 1 at 29.  Aschoff testified that he had "attended a course presented by the FBI on basic crime scene investigation" and that he had investigated "[h]undreds of crime scenes."  Dkt. # 13-5, Tr. Vol. II at 277.  Additionally, Aschoff conceded during cross-examination that his conclusion that the holes were stab marks was based not on any forensic tests but on his own observation "as anybody could look at them and you could make your own judgment that they match."  Id. at 320.

After reviewing the record, the Court finds that Petitioner's claim based on lack of a Daubert hearing is meritless.  As a result, appellate counsel did not perform deficiently in failing to raise the

claim.  Therefore, the OCCA's determination that appellate counsel was not ineffective for failing to raise this issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### iv.     Failure to Raise Prosecutorial Misconduct

Petitioner alleges multiple instances of prosecutorial misconduct during his trial and during sentencing, see Dkt. # 1 at 33, and claims that his appellate counsel was ineffective for failing to raise these issues.  Dkt. # 1-1 at 14.  The OCCA found that Petitioner's appellate counsel was not ineffective for failing to raise any of these issues on direct appeal.  Dkt. # 12-11 at 2.

First, Petitioner alleges that the prosecutor engaged in misconduct when she "yell[ed] and point[ed] at defendant as she addressed him directly" during her closing argument and made "derogatory comments directed at defense counsel" during her rebuttal closing, Dkt. # 1 at 33, and that his appellate counsel was ineffective for failing to raise these issues.  Dkt. # 1-1 at 14.  The record does not reflect that any of the prosecutor's actions or comments during her closing argument and rebuttal closing were sufficient to render the trial fundamentally unfair, as would be required to gain relief on direct appeal.  See Hogan v. State, 139 P.3d 907, 935 (Okla. Crim. App. 2006).  Therefore, the OCCA's determination that appellate counsel was not ineffective for failing to raise them was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Next, Petitioner contends that the prosecutor engaged in misconduct when she "commented about Petitioners [sic] drinking problems and that [the] 'victim' would never see her son again," Dkt. # 1 at 35-36, and that his appellate counsel was ineffective for failing to raise these issues.  Dkt. # 1-1 at 14.  Although Petitioner complains that the prosecutor commented about Petitioner's

drinking problems, it was defense counsel who brought up the issue of Petitioner's use of alcohol and attempted to frame it as an exculpatory or mitigating factor. See Dkt. # 13-7, Tr. Vol. IV at 482-85, 487, 489. The prosecutor commented on Petitioner's use of alcohol to rebut defense counsel's statements. See id. at 493, 495. During the sentencing hearing, the prosecutor stated that Petitioner "took Kim Smith away from her family, from her son, from her father."[7]  Dkt. # 13-3, Tr. Sent'g Hr'g at 5. While the record does not reflect that the victim had a son, this isolated statement was not enough to render the sentencing fundamentally unfair, as would be required to gain relief on direct appeal. See Hogan, 139 P.3d at 935. Therefore, the OCCA's determination that appellate counsel was not ineffective for failing to raise these issues was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Lastly, Petitioner alleges that the prosecutor "suppressed evidence of results from a forensic laboratory report which reflected an error," Dkt. # 1 at 37, and that appellate counsel provided ineffective assistance in failing to raise the issue. Dkt. # 1-1 at 14. Petitioner directs the Court's attention to two laboratory reports. Dkt. # 1 at 37; Dkt. # 1-1 at 25, 26. In the first report, dated April 8, 2010, a "swab of possible DNA material recovered from" a fillet knife (Item #1) was labeled "Item # 2." Dkt. # 1-1 at 25. In the second report, dated October 26, 2010, the swab was labeled "Item # 44" with the explanation that "Item # 44 was originally reported as item # 2 on a previous report dated 4-8-10. This report reflects that correction." Id. at 26. Petitioner does not specify what he believes the prosecutor did to suppress the reports, and the record contains no indication that the prosecutor suppressed the two lab reports. Defense counsel was allowed to examine the State's file on Petitioner's case, and Petitioner received copies from the file. See Dkt.

---

[7] The record reflects that the prosecutor did not make any comment to the jury about Smith's "son."

# 13-10, O.R. at 54, 59, 78, 81.  The record reflects that defense counsel examined the file and received copies several times.[8]  See id.  The Court finds that the OCCA's determination that appellate counsel was not ineffective for failing to raise this issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.[9]

<strong>v.      Failure to Allege Suppression of Evidence</strong>

In Ground 7, Petitioner raises the same claim – that the prosecutor suppressed evidence of a mislabeled DNA swab – that he raised in Ground 6, Dkt. # 1 at 37; see supra section B.2.c.iv, and alleges that his appellate counsel was ineffective for failing to raise the issue.  Dkt. # 1-1 at 14.  As the Court noted above, Petitioner does not specify what he believes the prosecutor did to suppress the reports, and the record does not contain any indication that the prosecutor suppressed the two lab reports.  The Court finds that the OCCA's determination that appellate counsel was not ineffective for failing to raise this issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.

---

[8] The last time defense counsel requested and received copies from the State's file was on October 20, 2010 – eight days before the second report, dated October 28, 2010, was released.  Dkt. # 13-10 at 81.

[9] Petitioner also claims that the prosecutor engaged in misconduct when she referred to Smith as the "victim" instead of the "alleged victim"; characterized Smith's thumb wound as a defensive wound; allowed Detective Aschoff to testify falsely; and referred to Smith's death as a "murder". Dkt. # 1 at 34-35.  These claims are unexhausted. However, in light of the procedural posture of this case it would be futile to require Petitioner to return to the state court to exhaust, and the claims are subject to imposition of an anticipatory procedural bar.  Anderson, 476 F.3d at 1139 n.7.  In addition, the Court may deny the claims on the merits under 28 U.S.C. § 2254(b)(2), and, as the Court finds that the claims lack merit, habeas relief is denied under 28 U.S.C. § 2254(b)(2).

### vi.    Failure to Allege Insufficient Evidence

In Ground 8, Petitioner claims that "[t]he evidence is insufficient to support the conviction for [the] crime of murder in the second degree," id. at 3, and that his appellate attorney was ineffective for failing to raise the issue. Id. at 14.  Petitioner argues that the prosecution presented contradictory evidence and that the physical evidence collected from the motel room is untrustworthy because "[m]istakes were made collecting swabs." Id. at 3-4.

In evaluating a challenge to the sufficiency of the evidence, the OCCA views the evidence in the light most favorable to the prosecution "to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Spuehler v. State, 709 P.2d 202, 203–04 (Okla. Crim. App. 1985) (citing Jackson v. Virginia, 443 U.S. 307, 316 (1979)). The OCCA "accept[s] all reasonable inferences and credibility choices that tend to support the verdict." Davis v. State, 268 P.3d 86, 111 (Okla. Crim. App. 2011) (citing Bland v. State 4 P.3d 702, 713 (Okla. Crim. App. 2000)).

Under Oklahoma law, the elements of second degree depraved mind murder are (1) death of a human; (2) caused by conduct which was imminently dangerous to another person; (3) the conduct was that of the defendant; (4) the conduct evinced a depraved mind in extreme disregard of human life; (5) the conduct is not done with the intention of taking the life of any particular individual. Willingham v. State, 947 P.2d 1074, 1081 (Okla. Crim. App. 1997) (overruled on other grounds by Shrum v. State, 991 P.2d 1032, 1036 n.8 (Okla. Crim. App. 1999)).

Kimberly Smith was found dead from a stab wound on the floor of the motel room where she lived with Petitioner. Dkt. # 13-5, Tr. Vol. II at 217, 285-86.  Petitioner stated to police that they had been out drinking all night, and that, after they returned to the motel room, he passed out.  Dkt.

# 15.  Petitioner also admitted that they "may have argued" and that he and his wife were the only people in the room.  Id.  At trial, Shannon Haley, a housekeeper at the motel where Petitioner and Smith lived, testified that she saw them together around 11:30 p.m. on September 25, 2009 – the night before Smith was killed – and that both Petitioner and Smith appeared to be intoxicated.  Dkt. # 13-5, Tr. Vol. II at 228, 230-31.  A neighbor, Shanna Ramsey, testified that early in the morning of September 26, 2009, Petitioner and Smith were arguing in the hallway of the motel, Dkt. # 13-6, Tr. Vol. III at 338-341, and that during the argument, Petitioner called Smith a "dope whore" and stated that "he was going to whoop her ass."  Id. at 340.  Ramsey said that during this exchange both Petitioner and Smith were shoving each other.  Id. at 341.  In Petitioner's motel room, the police found a knife in the sink that appeared to have been washed, and they found Smith's blood in various places around the room.  Dkt. # 13-5, Tr. Vol. II 288, 301, 316.

Based on the foregoing, a reasonable jury could have found that Petitioner caused the death of Smith through conduct which evinced a depraved mind in extreme disregard of human life, yet without having the intention of taking Smith's life.  Viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Petitioner has not demonstrated that appellate counsel performed deficiently in failing to raise this claim.  Therefore, the OCCA's decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### vii.    Failure to Challenge Admission of Photographic Evidence

Petitioner claims that "[t]he grusome [sic] nature of the photograph evidence was unnecessary and was given to inflame the passion of the jury," Dkt. # 1-1 at 5, and that his appellate counsel was ineffective for failing to raise the issue on appeal.  Id. at 14.  On post-conviction appeal,

the OCCA held that Petitioner's appellate counsel was not ineffective for failing to raise the issue on appeal. Dkt. # 12-11 at 2. The record reflects that Petitioner's trial counsel filed a motion in limine to exclude the photographs. Dkt. # 13-2, Tr. Mot. Hr'g at 2. While the trial judge excluded certain photographs taken at the Medical Examiner's Office, he did not exclude additional postmortem photographs of Smith or photographs of other evidence in the case. Id. at 7-8. After reviewing the photographs admitted at trial, see Dkt. # 13-8 at 2, 8-10; Dkt. # 13-9 at 12, the Court finds that Petitioner has failed to demonstrate that appellate counsel performed deficiently. Therefore, the OCCA's adjudication of this claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### viii.    Failure to Raise Cumulative Error

In Ground 10, Petitioner asserts that "[t]he cumulative effect of all the errors addressed deprived the Petitioner of a fair trial," Dkt. # 1-1 at 9, and that appellate counsel was ineffective for failing to raise the issue. Id. at 14. The OCCA held that Petitioner's appellate counsel was not ineffective for failing to raise either the issue of cumulative error or the underlying issues raised by Petitioner in Propositions 1-7 of his application for post-conviction relief. Dkt. # 12-11 at 2.

Under Oklahoma state law, "[a] cumulative error argument has no merit when [the OCCA] fails to sustain any of the other errors raised by Appellant. Even when there have been prejudicial irregularities during the course of a trial, relief is warranted only if the cumulative effect of all the errors denied Appellant a fair trial." Pavatt v. State, 159 P.3d 272, 296 (Okla. Crim. App. 2007) (citations omitted). After reviewing the record, the Court cannot say that the cumulative effect of any errors was enough to deny Petitioner a fair trial. Therefore, Petitioner would not have been entitled to relief on this Ground, and the OCCA's determination that appellate counsel was not

ineffective for failing to raise this issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.

> ix.   **Failure to Allege Additional Instances of Ineffective Assistance of Trial Counsel**

Petitioner argues that his appellate counsel was ineffective for failing to allege additional reasons why his trial counsel was ineffective.  Dkt. # 1-1 at 11, 14.  The OCCA rejected this claim. Dkt. # 12-11 at 2.  After reviewing the record, the Court cannot find that the OCCA's determination that appellate counsel was not ineffective for failing to raise these issues was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Petitioner alleges that his trial counsel was ineffective for failing to request an "[e]xparte [sic] proceeding as to what [potential witness] Tracy Turner would testify to and prepare her for trial, couldn't get her ready for trial.  Counsel failed to make a continuance."  Dkt. # 1-1 at 12. During trial, Petitioner's counsel stated, outside the hearing of the jury, that he had received a phone call at around 4:50 p.m. on the second day of trial from a woman named Tracy Turner.  Dkt. # 13-6, Tr. Vol. III at 444.  Turner claimed that she had lived for a period of time at the same motel where Smith and Petitioner lived.  Id.  Petitioner's trial counsel stated that Turner told him that:

> she had overheard on numerous occasions Ms. Smith's outrages . . . . She indicated that she had knowledge that Ms. Smith would . . . actually stab the wall with various items, knives particularly.
>
> And she indicated to me that on one – at least one or more occasions, she indicated to the defendant that [–] I would just assume [–] commit suicide and have you go down on a murder charge.

Id. at 445.  Nothing in the record suggests that trial counsel engaged in any additional investigation of Turner or what she had told him.

Petitioner's trial counsel stated that after receiving the phone call he "immediately went down to the jail, [and] met with [Petitioner]" at around 5:30 p.m.  Id. at 445-46.  Petitioner affirmed in court that his attorney had met with him.  Id. at 446.  Petitioner's trial counsel stated that after discussing the matter with Petitioner, they decided not to call Turner as a witness.  Id.  Petitioner affirmed in court that he did not want to call Turner as a witness.  Id.

Counsel is presumed to have acted in an "objectively reasonable manner" and in a manner that "might have been part of a sound trial strategy."  Bullock v. Carver, 297 F.3d 1036, 1046 (10th Cir. 2002) (emphasis omitted).  Where the facts establish that decisions made by counsel were, in fact, "strategic choices made after thorough investigation of law and facts relevant to plausible options," those decisions are "virtually unchallengeable."  Strickland, 466 U.S. at 690.  However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91. Once a decision is determined to be strategic, the petitioner may only establish deficient performance if "the choice was so patently unreasonable that no competent attorney would have made it."  Bullock, 297 F.3d at 1046 (citations and internal quotation marks omitted).  Decisions regarding impeaching witnesses and introducing evidence are "quintessentially" matters of trial strategy and tactics.  Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008); Boyd, 179 F.3d at 915; see Strickland, 466 U.S. at 699.

Even though trial counsel's decision not to call Turner may have been made "after less than complete investigation," Strickland, 466 at 691, the decision was reasonable under the circumstances.  Trial counsel's opportunity to investigate Turner's claims was limited as Turner did not contact defense counsel until the evening of the second day of trial.  Dkt. # 13-6, Tr. Vol. III at

31

445.  Turner told Petitioner's trial counsel that Smith had previously threatened to frame Petitioner for murder by committing suicide.  Id.  While it appears that, prior to trial, defense counsel considered the possibility of a defense based on the idea that Smith's death was a suicide, see Dkt. # 13-2, Tr. Mot. Hr'g at 10, Petitioner's counsel explicitly stated at trial that "[m]y argument has never been this was a suicide." Dkt. # 13-7, Tr. Vol. IV at 494.  Additionally, trial counsel discussed with Petitioner whether to call Turner as a witness, and Petitioner's "decision after discussions with" his trial counsel was to not call Turner.  Dkt. # 13-6, Tr. Vol. III at 446.

Petitioner also alleges ineffective assistance of trial counsel because counsel failed to request OUJI-CR 9-46 (Reenactment Evidence).  Dkt. # 1-1 at 11.  As determined above, see supra section B.2.c.i, this jury instruction was not applicable to the diagram prepared by Detective Aschoff, and therefore, trial counsel was not ineffective for failing to request it.  Petitioner claims that his trial counsel failed to "adequately investigate prosecution witnesses" and "failed to call or investigate defense witnesses."  Dkt. # 1-1 at 12.  The record reflects that Petitioner's trial counsel cross-examined the State's witnesses, and Petitioner fails to explain why he believes his trial counsel's investigation of those witnesses was inadequate.  Petitioner also fails to identify any defense witness that he believes his trial counsel should have investigated or called.  Petitioner further alleges that his trial counsel failed to "subject the prosecutions [sic] case to meaningful adversial [sic] testing" and that trial counsel failed to "advance any defense theory."  Id.  The record reflects that Petitioner's trial counsel delivered an opening statement and a closing argument in which he argued that the prosecution had not shown that Petitioner acted with intent.  See Dkt. # 13-7, Tr. Vol. IV at 480-81.  Trial counsel also cross-examined witnesses and, at various times, made proper objections.

32

Petitioner argues that trial counsel was ineffective because he failed to object to the admission of the DVD recording of Petitioner's custodial interrogation on the basis of a Confrontation Clause violation; he failed to cross-examine Detective Huff; and he failed to investigate and review the DVD recording. Dkt. # 1-1 at 11-12. As discussed above, see supra section B.2.c.ii, there is legal disagreement as to whether an officer's recorded statements in the context of an interrogation violate the Confrontation Clause, and Petitioner cannot show that his trial counsel, in not objecting to the admission of the recording on those grounds, performed below the level expected from a reasonably competent attorney in a criminal case. Petitioner also fails to show that he was prejudiced by counsel's failure to call Detective Huff as a witness. Additionally, the record reflects that trial counsel did review the recording of Petitioner's custodial interrogation. See Dkt. # 13-2, Tr. Mot. Hr'g at 12.

Petitioner claims that his trial counsel was ineffective because he failed to subpoena Smith's psychiatric and medical records; failed to impeach the State's witness using a forensic lab report that showed a DNA swab had been mislabeled, see supra section B.2.c.iv; and was absent during jury deliberations. Dkt. # 1-1 at 12. Petitioner also argues that trial counsel was ineffective for failing to object to instances of alleged prosecutorial misconduct. Id. The record does not reflect that trial counsel acted in an objectively unreasonable manner or that Petitioner was prejudiced by his trial counsel's actions. Petitioner fails to state any reason why his trial counsel should have subpoenaed Smith's medical and psychiatric records. Smith's past medical history, including her injuries from a recent car accident, was not in dispute, and her psychiatric history was not at issue, as suicide was never argued at trial. Petitioner has not shown that he was prejudiced by the failure of trial counsel to impeach the State's witness using the forensic lab reports. Witness Jonathan Wilson testified at

33

trial that "[b]lood was not detected" and "no DNA information was obtained" from the swab that was mislabeled, Dkt. # 13-6, Tr. Vol. III at 434, and the impeachment value of the mislabeling – which was corrected before trial – would have been minimal.  The record also does not reflect that anything occurred during jury deliberations that would have required Petitioner's trial counsel to be present.  Additionally, as discussed above, see supra section B.2.c.iv, Petitioner has not shown that he suffered prejudice as a result of any alleged prosecutorial misconduct even where defense counsel failed to object.[10]

Because the underlying claims of ineffective assistance of trial counsel lack merit, Petitioner fails to demonstrate that appellate counsel provided ineffective assistance in raising the claims on direct appeal.  Therefore, he has not shown that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, Strickland.

### 3.    Grounds 3-11: Procedural Bar

In his federal petition for a writ of habeas corpus, Petitioner claims that the trial court erred in not giving a jury instruction related to reenactment evidence (Ground 3); that the introduction of a DVD recording violated the Confrontation Clause (Ground 4); that the trial court should have held a Daubert hearing before allowing crime scene reconstruction testimony (Ground 5); that he was denied due process of law because of prosecutorial misconduct (Ground 6); that the prosecutor

---

[10] Petitioner also claims that his trial counsel was ineffective for failing to object to "knowingly perjured" testimony given by Detective Aschoff and that his appellate counsel was ineffective for failing to raise the issue.  This claim is unexhausted.  However, in light of the procedural posture of this case it would be futile to require Petitioner to return to the state court to exhaust and the claim is subject to an anticipatory procedural bar.  In addition, the Court may deny the claim on the merits under 28 U.S.C. § 2254(b)(2).  As Petitioner neither states what portion of Detective Aschoff's testimony was allegedly perjured, nor demonstrates a reasonable probability that, had counsel objected to whatever portion of Detective Aschoff's testimony Petitioner alleges is "knowingly perjured," the outcome of his case would have been different, the Court finds the claim lacks merit, and habeas relief is denied.  28 U.S.C. § 2254(b)(2).

improperly suppressed evidence (Ground 7); that there was insufficient evidence to convict Petitioner of second degree murder (Ground 8); that photographic evidence should not have been admitted (Ground 9); that cumulative error deprived him of a fair trial (Ground 10); and that his trial counsel was ineffective for additional reasons not raised on direct appeal (Ground 11). Dkt. ## 1, 1-1. Petitioner first raised Grounds 3-11 in an application for post-conviction relief (Dkt. # 12-5). On appeal from the trial court's denial of Petitioner's application for post-conviction relief, the OCCA cited Okla. Stat. tit. 22 § 1086 and held that "Petitioner has not raised any substantive issue" in Propositions 1-9[11] "that could not have been raised during his trial or in his direct appeal." Dkt. # 12-11 at 1-2.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim that was resolved on an independent and adequate state procedural ground, unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see Maes v. Thomas, 46 F.3d 979, 985-86 (10th Cir. 1995). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985 (citation omitted). A finding of procedural default is an adequate state ground if it has been applied evenhandedly in the "vast majority" of cases. Id. at 986 (citation omitted).

Applying the principles of procedural bar to these facts, the Court concludes that Grounds 3-10 are procedurally barred from this Court's review. The state court's procedural bar, as applied

---

[11] Propositions 1-9 of Petitioner's application for post-conviction relief correlate to Grounds 3-11 of Petitioner's federal petition for a writ of habeas corpus.

to these claims, was an independent ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." See id. at 985. The OCCA based its decision solely upon Oklahoma rules and case law, including Okla. Stat. tit. 22, § 1086. In addition, as to Grounds 3-10, the procedural bar applied by the OCCA was based on an adequate state ground. See Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002) (holding Okla. Stat. tit. 22, § 1086 "is an independent and adequate state ground for denying habeas relief"). Therefore, the procedural bar imposed by the OCCA on the claims raised in Grounds 3-10 is independent and adequate to preclude federal review.

The Court further finds that the procedural bar imposed on Petitioner's ineffective assistance of trial counsel claims raised in Ground 11 is independent and adequate to preclude federal habeas corpus review. When the underlying claim is of ineffective assistance of counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns justify an exception to the general rule of procedural default. Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citation omitted). The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citation omitted). In English v. Cody, 146 F.3d 1257 (10th Cir. 1998), the Tenth Circuit explicitly limited the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally. In English, the circuit court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

In this case, attorney Adam Haselgren represented Petitioner at trial. Richard Couch represented Petitioner on appeal. For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel on appeal. The second English factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. Id. at 1263-64. Even if Petitioner's claims in this case could not all be resolved on the trial record alone, Petitioner has not alleged that the Oklahoma remand procedure, as provided by Rule 3.11 of the Rules of the Oklahoma Court of Criminal Appeals, was inadequate to allow him to supplement the record on his ineffective assistance of counsel claims. See Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir. 1999) ("Once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden shifts to the petitioner to make specific allegations as to the inadequacy of the state procedure."). Although Respondent has alleged an independent and adequate procedural bar, Dkt. # 12 at 29, Petitioner has not put the adequacy of Oklahoma's remand procedure at issue. As a result, Petitioner has failed to carry his burden of demonstrating that Oklahoma's procedural bar is inadequate, and his claim of ineffective assistance of trial counsel raised in Ground 11 is procedurally barred.

Because of the procedural default of Petitioner's claims in state court, this Court may not consider the claims raised in Ground 3-11 unless Petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. "The fundamental miscarriage of justice exception is an extremely narrow exception, implicated only in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Phillips v.

Ferguson, 182 F.3d 769, 774 (10th Cir. 1999) (citation and internal quotation marks omitted)).  To establish a fundamental miscarriage of justice, a petitioner "must support his allegations of innocence with 'new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'"  Cole v. New Mexico, 58 F. App'x 825, 830 (10th Cir. 2003) (unpublished) (citation omitted).  Petitioner has failed to make this showing.  In his petition, Petitioner never asserts that he is actually innocent.  Therefore, Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

Petitioner may also overcome the procedural bar by demonstrating cause and prejudice.  "Cause" must be "something *external* to the petitioner, something that cannot fairly be attributed to him."  Coleman, 501 U.S. at 753.  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S. 152, 168 (1982).  "Pro se litigants do not enjoy a more lenient standard," Frye v. Raemisch, 546 F. App'x 777, 785 (10th Cir. 2013) (unpublished) (citation omitted), and a petitioner's status as a pro se prisoner does not constitute "cause" for the procedural default.  Steele v. Young, 11 F.3d 1518, 1522 (10th Cir. 1993) (citation omitted).

The Court liberally construes the petition to argue ineffective assistance of appellate counsel as cause for the procedural default.  "Attorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default."  Hickman v. Spears, 160 F.3d 1269, 1272 (10th Cir. 1998) (citation omitted).  However, in order for an attorney's performance to constitute cause external to a petitioner, the attorney's performance must be constitutionally

ineffective under the standard established in Strickland. See Coleman, 501 U.S. at 752-54. Further, the ineffective assistance of appellate counsel claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. Carrier, 477 U.S. at 489; Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000).

On post-conviction appeal, Petitioner argued that appellate counsel provided ineffective assistance in failing to raise Grounds 3-11 on direct appeal. The OCCA held that "Petitioner has not shown that his appellate counsel's performance was objectively unreasonable in failing to get the jury verdict overturned or in failing to obtain other relief. He has not demonstrated a reasonable probability that the result of his appeal would have been different." Dkt. # 12-11 at 2. This Court has determined above that the OCCA's adjudication of Petitioner's claim of ineffective assistance of appellate counsel was not contrary to, and did not involve an unreasonable application of, Strickland. Therefore, ineffective assistance of counsel cannot serve as cause to overcome the procedural bar. Grounds 3-11 are procedurally barred and denied on that basis.

C.      **Certificate of Appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court "indicate[s] which specific issue or issues satisfy [that] showing." 28 U.S.C. § 2253. A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citation omitted). As to claims denied on procedural grounds,

Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decisions by the OCCA was debatable amongst jurists of reason. See Dockins, 374 F.3d at 937-38. As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## CONCLUSION

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for a writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1. Petitioner's motion to stay (Dkt. # 38) is **denied**.

2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.

**DATED** this 20th day of April, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

40